UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE


CIVIL ACTION NO. 7:12-CV-102-KKC

CITIZENS NATIONAL BANK OF PAINTSVILLE,                                        PLAINTIFF,


v.                                         **OPINION AND ORDER**


MCNB BANK AND TRUST COMPANY                                        DEFENDANT.

* * * * * * * * *

This matter is before the Court on the Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction, Motion to Dismiss for Improper Venue or, in the alternative to Transfer Venue (DE 11).

The Plaintiff is a Kentucky citizen. The Defendant is a West Virginia corporation. The

Defendant moves to dismiss the claims against it, arguing that this Court does not have personal

jurisdiction over it and that this district is the improper venue for the action. Alternatively, the

Defendant moves to transfer this action to West Virginia.

I.      **Background.**

In its Complaint, the Plaintiff asserts that it paid the Defendant more than $ 5.9 million to

purchase an interest in four loans to commercial developers. The Defendant promised to pay the

Plaintiff a proportionate amount of the interest for the life of the loans.  Three of the commercial

development loans were for terms of approximately 20 years.  The fourth loan was for a term of

approximately six years. The Plaintiff had no direct relationship with the borrowers.  The agreements

at issue are between the Plaintiff and Defendant only.

The Plaintiff asserts that the Defendant has falsely informed it that the loans were paid off

1

and, thus, the Plaintiffs are not entitled to any additional interest payments.  The Defendant wired the Plaintiff four separate payments totaling more than $5 million together with four communications asserting that the amounts wired were the total amounts due the Plaintiff under the participation agreements.

The Plaintiff asserts a claim against the Defendant for breach of the four participation agreements at issue and a claim for fraud.

### II.     Personal Jurisdiction

"The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff has the burden of establishing personal jurisdiction.  *Id.*  In responding to such a motion, the plaintiff cannot "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.*

The court has three options for deciding a 12(b)(2) motion prior to trial: 1) the court can decide the motion upon the affidavits alone; 2) the court can permit discovery to decide the motion; or 3) the court can conduct an evidentiary hearing to resolve any factual disputes.  *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)).

If all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction, the court need not conduct an evidentiary hearing before dismissing the claim. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997). A prima facie showing means that the plaintiff only has to present enough facts to avoid a motion to dismiss. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) (quoting *Data Disc, Inc. v. Systems Technology,*

*Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). In determining whether the plaintiff has met this burden, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). The court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). A court is not required, however, to "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel*, 106 F.3d at 153.

The determination that the plaintiff has made the prima facie showing of jurisdiction necessary to survive a motion to dismiss does not relieve him from ultimately having to prove jurisdiction by a preponderance of the evidence if the defendant again raises the jurisdictional issue later in the action. *Serras*, 875 F.2d. at 1214 (even if court issues pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense; a threshold determination that personal jurisdiction exists does not relieve the plaintiff at the trial from proving the facts upon which jurisdiction is based by a preponderance of the evidence); *Dean*, 134 F.3d at 1272 (defendant "can raise jurisdictional arguments during the trial as well.  It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction"); *Neogen Corp. v. U.S. Dept. of Justice*, 2006 WL 3422691, at * 7 n.4 (E.D. Ky. 2006).

If there are no factual disputes regarding the jurisdiction issue, then the court need not conduct a hearing but can decide on the pleadings and affidavits whether the plaintiff has established jurisdiction by a preponderance of the evidence. *Dean,* 134 F. 3d at 1272. (where "the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery. . . plaintiffs face the same burden as they would if there had been an evidentiary hearing:

proof of jurisdiction by a preponderance of the evidence.").

Neither party in this case has requested discovery on the issue of jurisdiction or an evidentiary hearing to resolve relevant factual disputes. Thus, to resolve the Defendant's Motion to Dismiss, the Court will determine whether, taking all of the Plaintiff's allegations as true, it has made the necessary prima facie showing of jurisdiction.

When determining whether personal jurisdiction exists over a defendant, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation omitted).

Prior to 2011, the sole inquiry on a motion to dismiss for lack of personal jurisdiction made in a Kentucky federal court was whether jurisdiction comported with the due-process clause of the U.S. Constitution. *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 543 (6th Cir. 1993); *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir. 1982). In 2011, however, the Kentucky Supreme Court determined that the state's long-arm statute does not allow for personal jurisdiction to the full extent of the due-process clause. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). In other words, there may be situations where a defendant has sufficient contacts with the state to satisfy jurisdiction under the due-process clause but the Kentucky statute still does not permit jurisdiction. *Id*. (citing *Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 476 N.Y.S.2d 64, 464 N.E.2d 432, 435 (1984)).

Thus, in determining whether this Court may exercise personal jurisdiction over a defendant, the Court must first look to whether jurisdiction is permissible under Kentucky's long-arm statute,

KRS 454.210.

The Plaintiff argues that jurisdiction is permissible under four provisions of the long-arm statute.  Those provisions permit this Court to exercise personal jurisdiction over a person where the claim against the person arises from the person's:

> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.  . . .

KRS 454.210(2)(a).

The Defendant argues that it cannot be deemed to have transacted business in Kentucky under the first provision of the long-arm statute because another Kentucky statute provides that a foreign financial institution "shall not be considered to be doing, transacting, or carrying on business in this state solely by reason of engaging in" certain enumerated activities. KRS 286.2-670(1).  One of those activities is the "sale of loans." KRS 286.2-670(1)(e).

The first issue is whether the statute setting forth the exceptions to "transacting business" applies to the long-arm statute.  Neither of the two statutes explicitly states that the exceptions to transacting business in KRS 286.2-670 apply to the long-arm statute. Nor do either of the statutes reference the other.  There is no Kentucky state court case that interprets KRS 286.2-670.

Accordingly, the Court will turn to the rules of statutory construction.  The Court recognizes

that "statutes addressing the same subject matter generally should be read as if they were one law." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2005) (quotations and citation omitted). But these two statutes do not address the same subject matter.

The Kentucky long-arm statute addresses personal jurisdiction by Kentucky courts over nonresidents and falls within the KRS Chapter governing civil practice in Kentucky courts. KRS 286.2-670, on the other hand, does not explicitly address jurisdiction or civil practice at all.  It falls within the Kentucky Financial Services Code which deals with the "regulation, supervision, chartering and licensing of banks, trust companies, savings and loan association, consumer loan companies, investment and industrial loan companies, and credit unions." KRS 286.1-011(2).

Among other things, the Kentucky Financial Services Code provides that no foreign bank can "transact any banking business in this state except to lend money, unless specifically authorized by law or administrative regulation,"  KRS 286.3-030(3), and that no institution can "transact any business. . . until it has been issued a charter under KRS 286.3-020."  KRS 286.3-025.  Before approving an application for a bank charter, the state must find that "the public convenience and advantage will be served by opening of the proposed institution." KRS 286.3-020(1). In making that finding, the state has to consider various facts including "conditions in the community;" the institution's "organizational and capital structure and amount of capitalization;" and the experience, ability, and reputation of the institution's officers and directors.  KRS 286.3-020(1).

The General Assembly enacted the statute that is currently codified as KRS 286.2-670 in 1970 because "burdensome statutes relating to the qualifications of . . . foreign corporations discourage such foreign corporations from doing business within Kentucky and discourage foreign corporations from making mortgage money available within this state."  1970 Ky. Acts 811.  The

6

statute was enacted because it was "desirable and in the public interest of the citizens of this state to encourage foreign lending institutions to lend money within this state for the purpose of the development of property within this state." *Id.* The statute enacted by the legislature specifically stated "[n]o foreign lending institution solely by reason of engaging in any one or more of the activities set forth in . . . this Act shall be required to qualify to do business in this state. . . ." 1970 Ky. Acts 811. Substantially the same language is now codified at KRS 286.2-680.

Thus, KRS 286.2-670 was intended to permit foreign banks to lend money in Kentucky to develop property without having to qualify to do business in the state as required elsewhere in the Code for financial institutions transacting business in the state. There is no indication that the General Assembly also intended to circumscribe the jurisdiction of Kentucky courts over foreign financial institutions.

The Court recognizes that two federal courts have interpreted the statute to provide that foreign banks cannot be subject to personal jurisdiction in Kentucky for conducting the enumerated activities. *Jude v. First National Bank of Williamson*, 259 F. Supp. 2d 586, 591 (E.D.Ky. 2003); *Bank of Louisville v. California First Bank*, 641 F. Supp. 59, 61 (W.D.Ky. 1986). However, in *Jude*, the court expressed its "doubts as to whether, in enacting these exceptions to what is considered 'doing, transacting, or carrying on business,' the Kentucky legislature likewise intended these same activities should also not be considered as 'transacting business' for purposes of asserting jurisdiction under Kentucky's long-arm statute." *Jude*, 259 F. Supp. 2d at 590.

In *Jude*, the court noted a decision by the Iowa Supreme Court analyzing a similar statute in which the court determined that "the state legislature likely enacted these exceptions only for the intended purpose of determining whether foreign corporations need obtain a certificate of authority,

not whether the foreign corporation was amenable to personal jurisdiction." *Id.* (citing *Great Atlantic & Pacific Tea Co., Inc. v. Hill-Dodge Banking Co.*, 122 N.W.2d 337, 340 (1963)). In *Jude,* the court further noted that, after the Iowa court's decision, the Iowa legislature revised the statute to make clear that the list of exceptions applies when determining whether a foreign corporation must obtain a certificate of authority from the secretary of state to "transact business." *Jude*, 259 F. Supp. 2d at 591, n.1.

The legislative history of the Kentucky statute makes clear that the Kentucky General Assembly enacted the exceptions to relieve foreign financial institutions from the burdens of having to qualify to do business in the state before they could engage in certain activities.  The legislature mentioned nothing about limiting the jurisdiction of Kentucky courts over corporations that engage in those activities.

Finally, the Kentucky Supreme Court has directed that the nine provisions defining the kinds of activities that will allow a Kentucky court to exercise jurisdiction over a nonresident "should be liberally construed in favor of long-arm jurisdiction."  *Caesars*, 336 S.W.3d at 56.

For these reasons, the Court finds that the exceptions to transacting business set forth in KRS 286.2-670(1) do not apply to Kentucky's long-arm statute.

But, even assuming that the exceptions do apply for purposes of personal jurisdiction, the Defendant's actions in this case would not fall within the exceptions. This is because, under its plain language, the statute only excepts "the sale of loans."  KRS 286.2-670(e).  Here, the Defendant did not sell the Plaintiff "loans."  The Defendant sold the Plaintiff a *participation interest* in each of the four loans. (DE 1-1, Participation Agreement, Recital & § 1.)

In determining whether, in exempting the "sale of loans," the legislature also intended to

8

include the sale of certain *interests* in loans, the Court will employ the basic rule of statutory construction that, when particular language is included in one part of an act, but omitted in another part of the same act, it can be presumed that the omission was done intentionally. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

In addition to exempting the "sale of loans" from activities deemed to be transacting business in Kentucky, KRS 286.2-670 also exempts the "acquisition by purchase" or "by assignment" of loans. With regard to the purchase and assignment of loans, the legislature specifically included the acquisition or purchase of "any interest in loans." KRS 286.2-670(1)(a). Because the legislature specifically included the phrase "any interest in loans" when discussing the purchase of loans but did not include the phrase when discussing the sale of loans, it can be presumed that the legislature intended that selling "any interest in loans" is not exempt from being considered "transacting business" for purposes of the statute.

This makes sense at least with regard to the long-term, mutual obligations under the participation agreements at issue in this case. The agreements specifically "contemplat[] a *continuing* agreement. . . ." (DE 1-1, Weston Lodging Participation Agreement, § 5.) The agreements provide that the Plaintiff must wire money to the Defendant to cover advances on the loans. (DE 1-1, Weston Lodging Participation Agreement, § 6.) The Defendant must report to the Plaintiff all payments collected on the loan and pay the Plaintiff its share. (DE 1-1, Weston Lodging Participation Agreement, § 7.)

Throughout the life of the agreements, the Defendant was required to perform various obligations for the benefit of the Plaintiff, including holding all documents regarding the loans and receiving all payments from the borrower. (DE 1-1, Weston Lodging Participation Agreement, § 8.)

The Defendant was also required to remit to the Plaintiff its share of any payments made by the borrower. (DE 1-1, Weston Lodging Participation Agreement, § 8.) Those continuing payments would be wired to the Plaintiff's account in Kentucky.

The Defendant was required to consult with the Plaintiff before taking various actions including amending the loan agreement with the borrower, accelerating the maturity date of the borrower's loan, or commencing any foreclosure against the borrower. (DE 1-1, Weston Lodging Participation Agreement, § 16(b).) Three of the loans were approximately 20-year notes. The fourth loan was for a term of approximately six years.

Accordingly, this was not a one-time sales transaction. Instead, the participation agreements envisioned a long-term relationship between the parties with continuous payments, reports, and consultations.

As in *Jude*, "given this Court's questioning of the intended scope of applying [KRS 286.2-670] to the assessment of whether personal jurisdiction exists, as well as Kentucky's expressed commitment to a broadened concept of personal jurisdiction, this Court is not willing to extend § 287.670 beyond the activities specifically identified in the statute." *Jude*, 594 F. Supp. 2d at 594 n.3. The list of activities specifically identified in KRS 286.2-670(1) does not include the sale of "interest in loans."

The Defendant does not dispute that, if its activities were not covered by KRS 286.2-670, it was "transacting business" in Kentucky. It reached out to a Kentucky citizen and entered into four separate agreements establishing a long-term relationship that would require continuous and systematic contacts between the parties. Further, the Plaintiff's claim arises from these actions. In fact, the Plaintiff's claim arises precisely from the Defendant's actions of sending four separate wire

payments totaling more than $5 million to the Plaintiff's Kentucky account along with communications indicating that the Plaintiff had been paid all it was owed under the agreements.

For these reasons, the Court finds that the Defendant was transacting business in Kentucky when it entered into the four participation agreements at issue with a Kentucky resident. Further, the Plaintiff's claim arises from the Defendant's actions in transacting business with the Plaintiff, a Kentucky corporation. Accordingly, the Defendant is subject to this Court's jurisdiction under Kentucky's long-arm statute.

Jurisdiction by this Court over the Defendant also comports with federal due process. The following criteria are used to determine personal jurisdiction in the Sixth Circuit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

"If these criteria are satisfied, jurisdiction is appropriate if maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tobin*, 993 F.2d at 543 (citations and internal quotation marks omitted).

As discussed, the contracts at issue here envisioned a long-term relationship with a Kentucky resident with requirements to pay, consult with, and report to the Kentucky resident. The Defendant entered into four separate agreements with the Plaintiff. There is no dispute that the Defendant reached out to the Plaintiff in Kentucky to form these long-term and mutual rights and obligations or that, prior to the parties entering into the agreements, the Defendant communicated multiple times

11

with the Plaintiff in Kentucky.  The Defendant sent the four wire transfers that are the issue in this totaling more than $5 million to the Plaintiff in Kentucky.

Thus, the Defendant purposefully availed itself of the privilege of acting and causing a consequence in Kentucky. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (directing courts to consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.")  Jurisdiction cannot be avoided simply because the defendant was never physically present in the forum state.  *Id*. at 476.  This is especially true now that technology makes it less and less necessary that two parties to a financial transaction ever travel or even be present in the same location.

The next issue is whether the Plaintiff's cause of action arises from the Defendants' activities in Kentucky. This is a "lenient standard." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Id*. (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996)). This factor "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Id*. (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989)).

The Plaintiffs breach-of-contract and fraud claims clearly have a substantial connection to the Defendant's actions in Kentucky.  The claims arose from the Defendant's acts of entering into the four long-term contracts with a Kentucky corporation and wiring the four payments to the Plaintiff.

Finally, the acts of the Defendant must have a substantial enough connection with Kentucky to make the exercise of jurisdiction over the Defendant reasonable. Where there is a finding of purposeful availment and that the cause of action arose from the defendant's contacts with the forum

state, an inference arises that this third factor is also met. *CompuServe*, 89 F.3d at 1268. Factors relevant to the reasonableness inquiry include, "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

Although the Defendants may be more burdened by defending a lawsuit in Kentucky than in West Virginia, this state has a legitimate interest in protecting the business interests of its citizens. The Plaintiff has an obvious interest in obtaining relief and, although West Virginia may also have an interest, that does not make jurisdiction by this Court unreasonable.

### III.   Venue.

The Defendant also argues that this Court is an improper venue for this action.  Under 28 U.S.C. § 1391, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise as provided in this section, any judicial district in which any defendant is subject to personal jurisdiction with respect to such action,.

28 U.S.C. § 1391(b).

Under  28 U.S.C. § 1391(d), a corporation is deemed to reside for venue purposes "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction."  The Court has determined that it has personal jurisdiction over the Defendant. Accordingly, for venue purposes, it resides in the Eastern District of Kentucky and venue is proper under subsection (1) of 28 U.S.C. § 1391(b).

Under subsection (2), venue is proper in any judicial district where a substantial part of the

events or omissions giving rise to the Plaintiff's claims occurred. Under this provision, venue may be proper in more than one district. The issue is not which forum is the "best" venue, but whether the district has a "substantial" connection to plaintiffs' claims, even if other districts have greater contacts. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir.1998).

In this case, the Plaintiff claims that the Defendant committed fraud and breached the four participation agreements by sending it four wire payments and four written communications fraudulently advising the Plaintiff that the loans had been paid in full. The Defendant sent the wire payments and communications to the Plaintiff in the Eastern District of Kentucky. Accordingly, a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred here.

## IV.    Conclusion.

For all these reasons, the Court hereby ORDERS that the Defendant's Motion to Dismiss for lack of personal jurisdiction, Motion to Dismiss for Improper Venue, or in the alternative to Transfer Venue (DE 11) is DENIED.

Dated this 26th day of July, 2013.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

14