UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:12-CV-102-KKC

CITIZENS NATIONAL BANK OF PAINTSVILLE,                                PLAINTIFF,

v.                                        **OPINION AND ORDER**

MCNB BANK AND TRUST COMPANY                                          DEFENDANT.

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion (DE 56) by Citizens National Bank of Paintsville to exclude the opinion of defendant's expert, Dr. Donald J. Mullineaux, and any evidence that Citizens should have purchased mortgage-backed securities in order to mitigate the damages caused by Defendant MCNB Bank and Trust Company's breach of four agreements between the parties.

## I.      Background

The parties entered into four "participation agreements." In such an agreement, there are three principal players: the participant, the lender, and the borrower. The participant provides funds to the lender and the lender uses those funds to make loans to the borrower. *See In re Autostyle Plastics, Inc.*, 269 F.3d 726, 736 (6th Cir. 2001).

In this case, the lender was defendant MCNB Bank and Trust Company, the participant was Citizens National Bank of Paintsville, and the borrowers were four different entities. The participation agreements were between only MCNB and Citizens. The borrowers were not parties to those agreements. The loan agreements, however, were between MCNB and the four borrowers. Citizens was not a party to

those contracts. Thus, Citizens did not enter into any agreement with the borrowers.

Pursuant to the participation agreements, MCNB sold to Citizens a portion of its interest in four commercial loans made to the four different borrowers. (DE 1-1, Agreement, ¶ 1.) The parties refer to the loans as the Weston Lodging Loan, the Greenbrier County Loan, the Jackson County Loan, and the American Pride Loan. The language of the four participation agreements is identical except for the description of the underlying loan. In this opinion, the Court will cite to the agreement dated January 19, 2007, which the parties have denominated the "Weston Lodging Agreement." (DE 1-1, Agreement.)

The total amount of the four loans was approximately $19 million and all were made for the construction of hotels in West Virginia. In total, Citizens paid MCNB about $ 6 million for its interest in the four loans.

There does not appear to be any dispute that MCNB sold Citizens an interest in the loans in order to comply with statutory lending limits on the dollar amount of loans any single bank can make to a single borrower or affiliated borrowers. (DE 59, Mem. at 2-4.) MCNB offered for Citizens to purchase the amount of the loan that was above MCNB's lending limit. Citizens agreed to purchase the interest in the loans because it was facing a weak demand for loans in Eastern Kentucky. (DE 59, Mem. at 3.)

The loans were for varying terms ranging from five to 21 years. The American Pride loan matured August 5, 2014. The Weston Lodging, Greenbrier,

and Jackson County loans matured in 2028, 2029, and 2030, respectively. (DE 55-1, Mem. at 17.) Citizens purchased varying percentages in the four loans, ranging from 19.13% to 68.53%.

Citizens argues that it believed when in purchased the interest in the loans, it would receive payments of its portion of the principal and interest for as long as the borrower made payments on the loan. Thus, for example, it believed it would receive its portion of the payments made by Weston Lodging on the Weston Lodging agreement for as long as Weston Lodging made those payments, which could be up until February 1, 2028, the maturity date of that loan.

That is not what happened. Instead, before the maturity date of the loans, MCNB wired Citizens an amount equal to Citizens' percentage in the outstanding loan principal balances at the time and Citizens' percentage of the interest that had accrued at that point. The payments totaled roughly $5.3 million. These payments were wired on December 2, 2011 for the Weston Lodging Loan and on July 13, 2012 for the other three loans. None of the underlying loans had been paid off at that point. The borrower on each of these loans remained obligated to continue paying the principal and interest due on the loans.

Citizens asserts that it has maintained the $5.3 million in its account at the Federal Reserve Bank of Cleveland where it is earning .25 % interest annually.

MCNB argues that it decided to repurchase Citizens' participation interest in the four loans because it had entered into another participation loan with Citizens that went badly. (DE 55-1, Mem. at 5.) On that loan, Citizens was the original

lender and MCNB was the participant. The borrower defaulted on that loan. Lee Ellis, MCNB's CEO during the relevant time period, testified that MCNB and Citizens disagreed about how to handle the defaulted loan and that the transaction left a "bad taste in [MCNB's] mouth with respect to Citizens." (DE 55-7, Ellis Dep. at 67-68.) Ellis testified that ending its relationship with Citizens under the loans also made sense because, at that point, MCNB "had more borrowing capacity under the legal lending limits that we did previously." (DE 55-7, Ellis Dep. at 67.)

By prior order, this Court granted Citizens summary judgment and found that MCNB breached the agreements by purporting to repurchase Citizens' interest in the loans and ceasing to make any further payments to Citizens. The Court determined that issues of fact remained, however, regarding Citizens' damages.

MCNB has asserted an affirmative defense of mitigation of damages. In support of that defense, it offers Mullineaux's report and testimony. In the portion of his report at issue on this motion, Mullineaux opines that Citizens could have mitigated its damages by taking the $5.3 million from its Federal Reserve account and investing in mortgage-backed securities. (DE 57-1, Mullineaux Report.) He asserts that at the time that MCNB wired the first payment to Citizens' Federal Reserve account, mortgage-backed securities paid interest at 3.23% annually and that at the time of the final three payments, mortgage-backed securities paid 2.76%. Mullineaux opines that, had Citizens invested in mortgage-backed securities, its cash flow from the securities would have exceeded the lost cash flow on the

participation interests. Thus, Mullineaux opines, Citizens would have suffered no damages as a result of MCNB's termination of the agreements.

Citizens moves to exclude the Mullineaux report, arguing that it has no obligation, as a matter of law, to take steps to mitigate damages if the steps entail the risk of further damages. Citizens also argues that Mullineaux's opinion must be excluded because is not based upon sufficient facts or data or reliable principles or methods.

## II.    Analysis

Citizens argues that Mullineaux's opinion must be excluded because it is contrary to the applicable law on mitigation of damages. Both parties agree that law is found in Restatement (Second) of Contracts § 350 which provides as follows:

> (1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.

> (2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.

Restatement (Second) of Contracts § 350.

Citizens argues that Mullineaux's opinion must be excluded because it is undisputed that there is a risk that mortgage-backed securities will lose their value if interest rates rise. (DE 57, Mem. at 21.) It argues that, because mortgage-backed securities carry a known risk, "[a]s a matter of law, [Citizens] was under no obligation to use the money MCNB wired to [Citizens] to purchase mortgage-backed securities to mitigate damages." (DE 57, Mem. at 26.)

5

In essence, this motion in limine asks the Court to first find as a matter of law that investing in mortgage-backed securities was unduly risky and then to rule that Mullineaux's testimony is contrary to that finding and, therefore, must be excluded. "[T]he reasonableness of mitigation is a question of fact. . . and thus properly resolved by a jury." *C & O Motors, Inc. v. Gen. Motors Corp.*, 323 F. App'x 193, 197 (4th Cir. 2009) (quoting 22 Am.Jur.2d Damages § 344). "What is a reasonable effort to avoid the injurious consequences of a breach is a question of fact. So, too, is what is undue risk or expense." 24 Williston on Contracts § 64:27 (4th ed.). *See also R.K. Chevrolet, Inc. v. Bank of Commonwealth*, 501 S.E.2d 769, 771 (1998).

While Citizens presents evidence that mortgage-backed securities carry risks, MCNB responds with evidence that the risks are not undue. (DE 67, Mem. at 16-17.) The Court cannot say as a matter of law based on the facts presented at this point that the risks of investing in mortgage-backed securities were "undue." Nor can the court resolve at this point whether Citizens' efforts to avoid loss were "reasonable." Accordingly, the Court cannot find Mullineaux's testimony is contrary to law and will not exclude it on that basis.

Citizens also argues that Mullineaux's testimony should also be excluded because it is not "based on sufficient facts or data" and is not "the product of reliable principles and methods" as required by Federal Rule of Evidence 702. Citizens asserts that Mullineaux's opinion that Citizens could have invested in mortgage-backed securities is deficient because he did not look at the "relevant liability side of

[Citizens'] balance sheet" and did not analyze whether mortgage-back securities were a good investment under Citizens' own "Investment Policy." (DE 57, Mem. at 27-28.)

Nevertheless, Mullineaux did rely on facts in developing his opinion including Citizens' call reports, its prior investments in mortgage-backed securities, and its liquidity. These are *sufficient* facts and data to permit the jury to hear his opinion that Citizens could have invested the wired funds in mortgage-backed securities. To the extent that he failed to consider other relevant factors that make his opinion less credible, that is a subject that can be explored in cross examination, direct examination of Citizens' own witnesses, and argued to the jury.

Citizens argues that Mullineaux's testimony should be excluded because Mullineaux testified that investing in mortgage-backed securities was only something that Citzens *could* have done but not necessarily that it should have done that. Again, this is an issue that Citizens can explore in front of the jury on cross examination or on direct examination of witnesses who can provide testimony as to why mortage-backed securities were not a good investment option for Citizens. These deficiencies do not, however, render inadmissible Mullineaux's opinion that Citizens could have invested in such securities and the consequences of that investment.

After MCNB filed its response to Citizens' motion in limine, Citizens filed a separate motion asking this Court, "to the extent necessary or appropriate," to treat the motion in limine as a motion for summary judgment on MCNB's mitigation-of-

damages affirmative defense. The Court will deny this motion. It comes after MCNB responded to the motion in limine. The Court agrees with MCNB that it would be unfairly prejudicial to rule on the motion in limine employing a standard different than that requested in the motion. Further, the above discussion makes clear that there are issues of fact with regard to MCNB's mitigation-of-damages defense and, thus, it cannot be resolved on summary judgment.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Citizens' motion in limine (DE 56) to exclude the opinion of defendant's expert, Dr. Donald J. Mullineaux, and to prohibit any testimony or evidence that Citizens should have purchased mortgage-backed securities to mitigate damages is DENIED; and

2) Citizens' motion (DE 72) to treat its motion in limine as a motion for summary judgment on MCNB's mitigation-of-damages defense is DENIED.

Dated September 30, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY